1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CLYDE GOLDEN, individually and on           No. 1:18-cv-00033-NONE-JLT
     behalf of all others similarly situated,

12              Plaintiff,

13        v.                                      ORDER GRANTING DEFENDANT'S
                                                  MOTION FOR SUMMARY JUDGMENT
14   HOME DEPOT U.S.A., INC.,
                                                  (Doc. No. 43)
15              Defendant.

16

17

18        Plaintiff Golden initiated this action by filing his complaint on January 5, 2018.  Therein,

19   based upon his allegation that defendant misrepresented to him that he was purchasing a piece of

20   mahogany when he was not, he asserted causes of action for:  1) declaratory relief ; 2) breach of

21   the duty of good faith and fair dealing; 3) violation of California's Consumer Legal Remedies

22   Act, California Civil Code § 1750, *et seq.* ("CLRA"); 4) violations of California's Unfair

23   Competition Law, California Business & Professions Code § 17200, *et seq*. ("UCL"); 5)

24   violations of California's False Advertising Law, California Business & Professions Code §

25   17500, *et seq*. ("FAL"); 6) Negligent Misrepresentation; 7) Unjust Enrichment; and 8) Breach of

26   Express Warranty.  (Doc. No. 1.)

27        On May 31, 2018, the then-assigned District Judge dismissed plaintiff's claims for breach

28   of the duty of good faith and fair dealing, negligent misrepresentation, and unjust enrichment.

                                                1

1 | (Doc. No. 19 at 27–28.)  On October 11, 2019, defendant Home Depot U.S.A., Inc. filed a motion

2 | seeking summary judgment in its favor with respect to plaintiff's remaining claims for declaratory

3 | relief, violation of the CLRA, violations of the UCL, violations of the FAL, and breach of express

4 | warranty.  (Doc. No. 43.)  Plaintiff Golden filed his opposition on October 31, 2019.  (Doc. No.

5 | 44.)  Defendant filed its reply on November 7, 2019.  (Doc. No. 45.)

6 |       The court has determined the pending motion for summary judgment is suitable for

7 | decision based on the papers under Local Rule 230(g) and, for the reasons explained below, will

8 | grant defendant's motion in its entirety.

9 | **BACKGROUND**

10 |       The following facts are undisputed unless otherwise noted.  Plaintiff visited a Home

11 | Depot store in Bakersfield, CA on July 26, 2017.  (Doc. No. 43-3 ¶ 32.)  Plaintiff did not intend to

12 | buy lumber when he went to the Home Depot, nor did he have a particular use for any lumber.

13 | (*Id.* ¶¶ 38–39.)  Nonetheless, plaintiff purchased a piece of 1x2 lumber during his visit to the store

14 | that day.  (*Id.* ¶ 32.)

15 |       Plaintiff is a carpenter by education, training, and experience.  (Doc. No. 43-3 ¶ 14.)  He

16 | has worked as a carpenter for forty years and has been a member of the United Brotherhood of

17 | Carpenters since 1978.  (*Id.* ¶¶ 15, 18.)  Plaintiff describes his own experience working with

18 | wood as "fairly intimate" and reports having "skills and talents in dendrology," the scientific

19 | study of trees.  (*Id.* ¶¶ 19, 26.)  Plaintiff has experience in identifying wood types and testified at

20 | his deposition that he "usually know[s] the type of wood when [he] see[s] it" based on its color,

21 | grain, weight, general appearance, and, sometimes, price."  (*Id.* ¶ 27.)

22 |       Before plaintiff purchased any lumber on the date in question, he was aware that multiple

23 | species of wood have "mahogany" as part of their common name.  (*Id.* ¶ 33.)  In his complaint,

24 | plaintiff alleges that, "[a]uthentic mahogany and the only hardwoods that can [] truly be called

25 | mahogany are from the *Meliaceae* family."[1]  (Doc. No. 1 ¶ 33.)  Before purchasing the wood

26 | from the Home Depot store on the day in question, plaintiff determined that it did not appear to be

27 |

28 | [1] The parties use two different spellings for the *Melicaceae/Meliaceae* family.  For purposes of this order, the court will adopt the spelling utilized in plaintiff's complaint.

1   Honduras Mahogany.[2]  (*Id.* ¶ 35.)  Rather, he believed that it bore a resemblance to *Khaya*, or

2   African Mahogany.[3]  (*Id.* ¶ 34.)  There is no dispute that the lumber plaintiff actually purchased

3   from the Home Depot store was *Khaya* (African Mahogany) of the genus *Khaya* and family

4   *Meliaceae*.[4]  (*Id.* ¶ 49; Doc. No. 43-3 ¶¶ 2–3, 5.)  There is also no dispute that *Swietenia*

5   (Honduras Mahogany) is also a genus of the *Melicaceae* family.  (*Id.* ¶¶ 2–3, 6.)

6         Prior to making his purchase, plaintiff did not have any conversation with Home Depot

7   employees about the lumber.[5]  (*Id.* ¶ 36.)  Furthermore, before his purchase, plaintiff did not see

8   any advertisements about the lumber he bought.  (Doc. No. 43-3 ¶ 37.)  The price of the lumber

9   was $1.76 per linear foot.  (Id. ¶ 43.)

10        Plaintiff admits that he bought the lumber to satisfy a curiosity he had as to whether he

11   could identify the wood type.  (*Id.* ¶ 49.)  Plaintiff testified at his deposition that he also bought

12   the wood because he "wanted to see how fraudulent Home Depot was."  (Doc. No. 43-4, Ex. B

13   (Golden Dep. 70:12–13).)  In light of this purpose, according to plaintiff, he "found the smallest

14   quantity [he] could purchase."  (Doc. No. 43-4, Ex. B (Golden Dep. 76:20–23).)  Plaintiff spent

15   $3.52 in total on the lumber.  (Doc. No. 43-3 ¶ 43.)

16  [2]  Plaintiff's theory appears to have changed from the time of the filing of his complaint to the

17  time of his filing of his opposition to defendant's summary judgment motion.  He now argues that
    "genuine Mahogany is from the *Swietenia* genus of the *Meliaceae* family, commonly known as

18  Honduras Mahogany."  (Doc. No. 44 at 7.)

19  [3]  Plaintiff also testified at his deposition that he had experience with *Khaya* in a professional
    capacity.  (Doc. No. 43-4, Ex. B (Golden Dep. 69:3–5).)  Plaintiff's first experience working with

20  mahogany wood dates back to 1981.  (Doc. No. 43-3 ¶ 28.)  Additionally, he worked on a "very
    high-end residence in Palos Verdes where the entire kitchen and much of the millwork in the rest

21  of the house was *Khaya*."  (Doc. No. 43-4, Ex. B (Golden Dep. 68:24–69:2).)

22
    [4]  In his complaint, plaintiff has alleged that Home Depot marketed Eucalyptus labeled as Swamp

23  mahogany.  (*See* Doc. No. 1 ¶¶ 39, 61.)  Plaintiff also has alleged that he "tested the product he
    purchased and discovered that it was not, in fact, genuine mahogany, but actually Eucalyptus."

24  (*Id.* ¶ 62.)  However, the parties now agree that the lumber plaintiff purchased was not

25  Eucalyptus.  (Doc. No. 43-3 ¶¶ 46–47.)  Nonetheless, plaintiff never amended his complaint.

26  [5]  Plaintiff alleges in his complaint that "[a]t the time he purchased the packages [of 1x2 lumber],
    employees of Home Depot told Mr. Golden that the lumber products he was purchasing were

27  authentic, genuine mahogany."  (Doc. No. 1 ¶ 60.)  However, plaintiff testified at his deposition

28  that he did not talk to a Home Depot employee about the lumber at issue until "weeks or months"
    *after* his purchase.  (Doc. No. 43-4, Ex. B (Golden Dep. 83:2–4).)

1    In his complaint, plaintiff has alleged that Home Depot advertised its wood as "authentic"

2  and "genuine." (*See, e.g.*, Doc. No. 1. ¶¶ 94, 107, 119, 160.)  At his deposition, plaintiff testified:

3           Q: And when you saw the mahogany wood that Home Depot was
            advertising, it appeared to be to you *Khaya*?
4

            A: Yes.
5

6  (Doc. No. 43-4, Ex. B (Golden Dep. 69:6–11).)

7           Q: Did the sign that you saw in the store adjacent to the wood that
            you purchased from Home Depot in July 2017 describe the
8           mahogany as genuine?

9           A: No.

10          Q: Did the sign describe the mahogany as authentic?

11          A: No.

12          Q: Did the sign describe the mahogany as *Swietenia*?

13          A: No.

14  (*Id.* 75:12–22.)  Plaintiff has submitted as exhibits Home Depot advertisements stating that the

15  lumber "[m]eets the highest grading standings for strength and appearance" and "[m]ahogany is

16  regarded as a unique wood for cabinets and furniture." (Doc. No. 44-2, Exs. 1–2.)  None of

17  plaintiff's exhibits establish, however, that Home Depot used the words "authentic" or "genuine"

18  in describing the lumber in question.  (*See generally id.*)

19                                    **LEGAL STANDARD**

20          Summary judgment is proper if the movant shows "there is no genuine dispute as to any

21  material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  The

22  moving party bears the initial burden of "informing the district court of the basis for its motion,

23  and identifying those portions of the pleadings, depositions, answers to interrogatories, and

24  admissions on file, together with the affidavits, if any, which it believes demonstrate the absence

25  of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal

26  citation and quotation omitted).  The moving party may accomplish this by "citing to particular

27  parts of materials in the record, including depositions, documents, electronically stored

28  information, affidavits or declarations, stipulations (including those made for purposes of the

                                              4

1  motion only), admissions, interrogatory answers, or other materials" or by showing that such

2  materials "do not establish the absence or presence of a genuine dispute, or that an adverse party

3  cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).  A fact

4  is material if it could affect the outcome of the suit under the governing substantive law;

5  "irrelevant" or "unnecessary" factual disputes will not be counted. *Anderson v. Liberty Lobby,*

6  *Inc.*, 477 U.S. 242, 248 (1986); ); *see also T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,

7  809 F.2d 626, 630 (9th Cir. 1987).

8       If the moving party would bear the burden of proof on an issue at trial, that party must

9  "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving

10  party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  In contrast, if the

11  non-moving party bears the burden of proof on an issue, as plaintiff does here, the moving party

12  can prevail by "merely pointing out that there is an absence of evidence to support the non-

13  moving party's case." *Id.; see also In re Oracle Corp. Sec. Litig*., 627 F.3d 376, 387 (9th Cir.

14  2010) *(*citing *Celotex,* 477 U.S. at 325); Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment

15  should be entered, after adequate time for discovery and upon motion, against a party who fails to

16  make a showing sufficient to establish the existence of an element essential to that party's case,

17  and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.  "[A]

18  complete failure of proof concerning an essential element of the nonmoving party's case

19  necessarily renders all other facts immaterial." *Id*. at 322–23.  In such a circumstance, summary

20  judgment should be granted, "so long as whatever is before the district court demonstrates that the

21  standard for the entry of summary judgment . . . is satisfied." *Id*. at 323.

22       When the moving party meets its burden, the non-moving party must demonstrate that

23  there are genuine disputes as to material facts by either:

24          (A) citing to particular parts of materials in the record, including
            depositions, documents, electronically stored information,
25          affidavits or declarations, stipulations (including those made
            for purposes of the motion only), admissions, interrogatory
26          answers, or other materials; or

27          (B) showing that the materials cited do not establish the absence or
            presence of a genuine dispute, or that an adverse party cannot
28          produce admissible evidence to support the fact.

5

1   Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

2   586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party

3   may not rely upon the allegations or denials of its pleadings but is required to tender evidence of

4   specific facts in the form of affidavits or admissible discovery material in support of its

5   contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11;.

6          In ruling on a motion for summary judgment, a court does not make credibility

7   determinations or weigh evidence.  *See Anderson*, 477 U.S. at 255.  Rather, "[t]he evidence of the

8   non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.*

9   Only admissible evidence may be considered in deciding a motion for summary judgment.  Fed.

10  R. Civ. P. 56(c)(2); *see also Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

11  "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise

12  genuine issues of fact and defeat summary judgment."  *Soremekun*, 509 F.3d at 984; *see also*

13  *Anderson*, 477 U.S. at 250; *Wool v. Tandem Computs. Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

14         With these standards in mind, below the court will address defendant's pending motion

15  with respect to each of plaintiff's remaining causes of action.

16                                    **ANALYSIS**

17  **A.     Reliance**

18         Plaintiff's Unfair Competition Law ("UCL"), false advertising law ("FAL"), and

19  California Consumer Legal Remedies Act ("CLRA") claims all require reliance.  *Beyer v.*

20  *Symantec, Corp.*, 333 F. Supp. 3d 966, 980 (N.D. Cal. 2018) ("Reliance is required to achieve

21  standing under the UCL, FAL, and CLRA."); *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1111

22  (S.D. Cal. 2011) (finding failure to state a claim under UCL, FAL, and CLRA claims where

23  plaintiffs alleged that they relied on Nutella's representations on labels and television

24  advertisements, but admit they never personally visited Nutella website).  "Reliance is proved by

25  showing that the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the

26  plaintiff's injury-producing conduct," which requires a showing that "in its absence the plaintiff

27  in all reasonable probability would not have engaged in the injury-producing conduct."  *In re*

28  *Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009); *see also Wilson v. Frito Lay N.A., Inc.*, 260 F.

1   Supp. 3d 1202, 1214 (N.D. Cal. 2017) (finding no genuine dispute regarding reliance where the

2   plaintiff affirmed at his deposition that it was "fair to say that the natural label isn't the reason

3   that [he] bought them" and "things like taste and that it was a good snack were the reasons [he]

4   purchased them," contrasted with plaintiff's inconsistent pleadings alleging that the "all natural"

5   label misled him into thinking the purchased products were "made with all natural ingredients" or

6   "all natural").

7         Here, there is no dispute with respect to whether plaintiff relied on defendant's

8   representations regarding the wood he bought.  Before plaintiff purchased the lumber in question,

9   he was aware that multiple species of wood have "mahogany" as part of their common name.

10  (Doc. No. 43-3 ¶ 33.)  In his complaint, plaintiff alleges that, "[a]uthentic mahogany and the only

11  hardwoods that can [] truly be called mahogany are from the *Meliaceae* family."  (Doc. No. 1 ¶

12  33.)  Moreover, there is no dispute both that the lumber plaintiff purchased was of the *Khaya*

13  genus (Doc. No. 43-3 ¶ 49) and that *Khaya* (African Mahogany) is a genus of the *Meliaceae*

14  family.  (Doc. No. 43-3 ¶¶ 2–3, 5.)

15        Before his purchase, plaintiff believed the lumber at Home Depot resembled African

16  Mahogany and did not appear to be Honduras Mahogany.  (*Id.* ¶¶ 34, 35.)  Before his purchase,

17  plaintiff did not have any conversations with Home Depot employees about the wood (*id.* ¶ 36),

18  nor did he see any advertisements about the lumber.  (*Id.* ¶ 37.)  This evidence before the court on

19  summary judgment, in the form of plaintiff's own deposition testimony, flatly contradicts the

20  allegations of his complaint that "[a]t the time he purchased the packages, employees of Home

21  Depot told Mr. Golden that the lumber products he was purchasing were authentic, genuine

22  mahogany."  (Doc. No. 1 ¶ 60.)  In fact, the evidence on summary judgment establishes that

23  plaintiff's conversations with a Home Depot employee occurred "weeks" or "months" *after* he

24  purchased the lumber.  (Doc. No. 43-4, Ex. B (Golden Dep. 83:2–4).)  Those conversations are

25  thus irrelevant to the issue of whether plaintiff relied on Home Depot's statements in making his

26  purchase.  Instead, the Joint Statement of Undisputed Facts before the court on summary

27  judgment establishes that plaintiff purchased the lumber because he was pining to see whether he

28  could identify the wood type.  (Doc. No. 43-3 ¶ 49.)  As noted above, plaintiff also testified at his

1    deposition that he bought the wood because he "wanted to see how fraudulent Home Depot was."

2    (Doc. No. 43-4, Ex. B (Golden Dep. 70:12–13).)  Moreover, the uncontroverted evidence on

3    summary judgment shows that plaintiff "found the smallest quantity [he] could purchase" and

4    spent $3.52 total on the lumber.  (Doc. No. 43-3 ¶ 43; Doc. No. 43-4, Ex. B (Golden Dep:76:20–

5    23).)

6            Plaintiff further testified at deposition that the sign adjacent to the lumber at the Home

7    Depot store in July 2017 never described the mahogany he purchased as "genuine," "authentic,"

8    or "*Swietenia*," which once again contradicts the allegations in his complaint that Home Depot

9    advertised its lumber as "authentic" and "genuine."  (*Compare* Doc. No. 43-4, Ex. B (Golden

10   Dep. 69:6–11), *with* Doc. No. 1 ¶¶ 94, 107, 119, 160.)  Nor do the exhibits offered by plaintiff

11   show that Home Depot described its lumber as "authentic" or "genuine."  (*See generally* Doc. No.

12   44-2, Exs. 1–2.)  As in *Frito Lay*, where the court held that there was no genuine dispute

13   regarding reliance where the plaintiff testified that he bought the snacks because of taste and

14   contradicted his allegations that the "all natural" label misled him, here, plaintiff testified that he

15   wanted to purchase the wood—the wood that he concedes he believed looked like African

16   Mahogany and did not appear to be Honduras Mahogany—to satisfy his curiosity and prove

17   Home Depot was fraudulent, which likewise contradicts the allegations of his complaint that

18   Home Depot misled him into buying what it falsely represented to be "genuine" mahogany.  *See*

19   *Frito Lay*, 260 F. Supp. 3d at 1214.  (Doc. No. 1 ¶¶ 39, 61–62; Doc. No. 43-3 ¶¶ 2–3, 34–35, 49;

20   Doc. No. 43-4, Ex. B (Golden Dep. 70:12–13).)

21           Based on the evidence before the court on summary judgment, there is no genuine issue of

22   material fact regarding whether plaintiff relied on any representations made by Home Depot when

23   purchasing the lumber.  In short, the root of plaintiff's problem with respect to this claim is that

24   the undisputed evidence establishes his lack of reliance.  Accordingly, the court will grant

25   summary judgment in favor of defendant as to plaintiff's FAL, UCL, and CLRA claims.

26   **B.      Express Warranty**

27           To establish liability for breach of an express warranty under California law, a plaintiff

28   must show that a defendant made an "affirmation," "promise," "or description" about the product

1    purchased.  *See* Cal. Com. Code § 2313.  Additionally, a plaintiff must demonstrate that the

2    affirmation or promise was breached.  *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 988 (N.D. Cal.

3    2009) ("A claim for breach of an express warranty requires an actual breach.")  Here, there is no

4    genuine issue of material fact regarding whether Home Depot expressly warranted that its lumber

5    was "genuine" or "authentic" mahogany.

6            Plaintiff argues that Home Depot "expressly warrant[ed] that the goods are conforming to

7    genuine Mahogany, not a Mahogany substitute." (Doc. No. 44 at 23.)  In this regard, plaintiff is

8    simply barking up the wrong tree.  As discussed above, none of the exhibits or other evidence that

9    plaintiff has come forward with on summary judgment show that Home Depot described its

10   lumber as "genuine" or "authentic" mahogany.  (*See generally* Doc. No. 44-2, Exs. 1–2.)  Indeed,

11   plaintiff testified at his deposition that on the day he purchased the lumber, the sign at the Home

12   Depot store adjacent to the wood did not say "genuine" or "authentic." (Doc. No. 43-4, Ex. B

13   (Golden Dep. 75:12–22).)  Based upon this evidence, no reasonable jury could find that Home

14   Depot expressly warranted that the mahogany in question was "genuine" or "authentic."

15           Plaintiff contends that defendant would have the court believe "anything in the *Meliaceae*

16   family is Mahogany." (Doc. No. 44 at 7.)  Plaintiff, however, was the first to assert that authentic

17   mahogany sprouts from the *Meliaceae* family.  (Doc. No. 1 ¶ 33 ("Authentic mahogany and the

18   only hardwoods that can [] truly be called mahogany are from the *Meliaceae* family.").)

19   Apparently recognizing the need to spruce up his argument, plaintiff now elects to branch out and

20   argue that "African Mahogany is but a Mahogany substitute, while the *Swietenia* genus Honduras

21   Mahogany is genuine." (*Id.*)  However, by plaintiff's own admission, the lumber he purchased

22   from defendant—*Khaya* or African Mahogany, which is undisputedly a genus of the *Meliaceae*

23   family—may be called mahogany.  (Doc. No. 43-3 ¶¶ 2, 3, 5 49.)  Moreover, plaintiff's expert

24   testified at deposition that the *Meliaceae* family is sometimes referred to as the mahogany family.

25   (Doc. No. 43-4, Ex. A (Miller Dep. 59:16–60:2).)  Defendant too has come forward with evidence

26   on summary judgment supporting the contention that the *Meliaceae* family is referred to as the

27   mahogany family of wood.  (*See, e.g.*, Doc. No. 43-4, Ex. J ("African Mahogany is just as much

28   part of the *Meliaceae* (mahogany) family as the Central and South American species.").)

1    Therefore, in light of the evidence before the court on summary judgment (supported in

2  part by plaintiff's own admission embodied in the allegations of his complaint), there simply is no

3  evidence from which a reasonable jury could find that defendant expressly warranted that its

4  lumber was "genuine" or "authentic" mahogany.  Similarly, there is no evidence that defendant

5  breached any express warranty in selling the lumber to plaintiff.  Rather, the uncontroverted

6  evidence before the court on summary judgment establishes that plaintiff bought from defendant a

7  type of mahogany, just not Honduras mahogany.

8    Accordingly, the court will also grant summary judgment in favor of defendant as to

9  plaintiff's express warranty claim.  With summary judgment being granted in defendant's favor

10  as to plaintiff's FAL, UCL, CLRA, and express warranty claims, the court also will grant

11  defendant's summary judgment motion on plaintiff's remaining claim for declaratory relief.

12                                            **CONCLUSION**

13    For the reasons explained above, the court GRANTS defendant's motion for summary

14  judgment (Doc. No. 43) in its entirety.  The Clerk of Court is directed to CLOSE this case.

15  IT IS SO ORDERED.

16    Dated:    **May 20, 2020**                  _____

17                                            UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28